IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01112-REB-CBS

JEFFREY BRIMM,
    Plaintiff,
v.

FALCON SCHOOL DISTRICT NO. 49,
    Defendant.

RECOMMENDATION REGARDING DEFENDANT'S PARTIAL MOTION TO DISMISS

Magistrate Judge Shaffer

This matter comes before the court on a Partial Motion to Dismiss [Doc. 10] filed on August 11, 2015, by Defendant Falcon School District No. 49. The Motion was referred to the Magistrate Judge by Order of Reference [Doc. 14] dated August 24, 2015. This court has carefully considered the motion and related briefing, the entire case file, and applicable case law. For the following reasons, the court recommends that the motion be granted in part and denied in part.

**BACKGROUND**

Jeffrey Brimm brings this action pursuant to Title VII, 42 U.S.C. §§ 2000e, *et. seq.*, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et. seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq.*, and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2615, *et. seq.* This action arises out of Mr. Brimm's employment with Falcon School District No. 49 ("the District") and his subsequent termination.

Plaintiff alleges the following facts. Plaintiff is a sixty-four year old male with a physical disability; he suffers from a deteriorated meniscus in his knee. [Doc. 1 at ¶¶ 8, 16]. Mr. Brimm

1

began working as a security guard at Falcon High School ("Falcon High") in 2002. *Id.* at ¶ 13. During the twelve years that he worked at Falcon High, he "received positive evaluations for his performance" and gained the respect of administrators. *Id.* at ¶¶ 13-15. "Plaintiff was the only security guard in his fifties-sixties" employed at Falcon High. *Id.* at ¶ 18.

At the time of Mr. Brimm's termination, Falcon High employed two males (including Plaintiff) and one female security guard; both of his co-workers were "many years younger than the Plaintiff." *Id.* at ¶¶ 19-21. As a result of Mr. Brimm's seniority at the school, he would often informally serve as "lead security guard." *Id.* at ¶ 22. The female security guard, Laurie Carson, "took umbrage at Mr. Brimm's seniority," a fact demonstrated by her disparaging remarks towards him as well as her "[interference] with his work" and "positive relationships with school staff." *Id.* at ¶ 23.

In April 2013, Mr. Brimm's supervisor, Steve Oberg, noted during a performance evaluation, "Plaintiff had been moving slower than normal." *Id.* at ¶ 24. Plaintiff responded to Mr. Oberg's concern by stating that he had recently begun experiencing a back problem, but he would get it taken care of as soon as the school year was over. *Id.* The school year concluded without further comments to Mr. Brimm about his performance. *Id.* at ¶ 25. During July 27-29, 2013, the District scheduled a staff training session. *Id.* at ¶¶ 26-27. Plaintiff "suddenly experienced severe back pain" and "informed the District's HR department that he could not attend the last day of training." *Id.* at ¶ 27. As a result of the injury, Mr. Brimm took FMLA leave as well as "41 days of accrued sick leave;" he returned to work on January 7, 2014, more than five months after he made the FMLA request. *Id.* at ¶¶ 29, 34. Ms. Carson "took charge" while Plaintiff was on leave, and during that time "there were complaints about her demeanor and performance." *Id.* at ¶ 31.

One day after Mr. Brimm returned to work, January 8, 2014, Mr. Oberg convened a meeting with the security guard team to announce that "he was designating Plaintiff as the official lead security-guard, due to his excellent record at the school and because he had been serving de-facto in that capacity for years." *Id.* at ¶ 34. During this meeting, Ms. Carson "became visibly upset, and she "went to Oberg and complained." *Id.* at ¶¶ 34-35. The next day, Ms. Carson informed Plaintiff of her conversation with Mr. Oberg claiming that "she had vocally 'blistered' Oberg, including 'f-bombing' him." *Id.* at ¶ 36. Later that day, Mr. Brimm arrived late to an emergency call on the school's upper-floor. *Id.* Thereafter, Mr. Oberg told Plaintiff that "[he] had been going up the stairs 'too slowly for an emergency call.'" *Id.* at ¶ 37.

The following week, Mr. Brimm learned that the HR department had scheduled a fitness for duty exam with the District's doctor for January 15, 2014, as a result of an "anonymous call," which Mr. Oberg later admitted to placing. *Id.* at ¶¶ 38-39. During the exam, "the doctor did not examine Plaintiff other than to take his blood pressure, and look at his hands; no x-rays [or image scans] were taken." *Id.* at ¶ 40. Although the doctor "expressed concerns about [Plaintiff's] knee" and its effect on Mr. Brimm's ability to carry out his duties, "the doctor did not opine that Plaintiff was unfit for duty" during the exam. *Id.* at ¶ 41. However, after the doctor spoke with the District's HR department about Plaintiff's job description, he "opined that 'the patient is not fit for duty and could only continue the current position as a security officer with modified duty.'"[1] *Id.* at ¶ 41.

Between January 16-30, 2014, Plaintiff worked without any duty modifications. *Id.* at ¶ 45. Additionally, no further concerns were brought to Mr. Brimm's attention prior to his

---

[1] The parties dispute whether Dr. Baca's report regarding Mr. Brimm's fitness for duty exam may be considered in deciding Defendant's Motion. [Doc. 31 at 6-8]; [Doc. 34 at 4-5]. Because Defendant's Motion can be decided without referencing the report, the court declines to consider the report. *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (concluding that "the court acted well within its discretion in declining to consider the documents attached to [defendant's] motion to dismiss").

termination. *Id.* On January 30, 2014, Plaintiff was called into a meeting and informed that "he was terminated for being physically unable to perform his duties." *Id.* at ¶ 46. Subsequently, Mr. Oberg told Plaintiff "this never would have happened if you hadn't gone to HR with your back issue." *Id.* at ¶ 47. After Mr. Brimm's termination, Ms. Carson was "promoted to Plaintiff's position." *Id.* at ¶ 48.

In its Partial Motion to Dismiss, Defendant argues that Plaintiff has not pled sufficient factual allegations to make out plausible claims under Title VII, the ADEA, or the FMLA, and therefore, those claims should be dismissed.[2] To support his first claim of gender discrimination, Plaintiff contends that a biased female co-worker improperly influenced the District's decision to terminate him. Plaintiff's third claim of age discrimination relies on assertions that he was over 60 years old when terminated, he was qualified for the security guard position, and someone younger replaced him. Plaintiff's fourth claim alleges that the District's decision to terminate him 3-weeks after returning from a leave of absence was retaliation for exercising his rights under FMLA.

## ANALYSIS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[2] Plaintiff's ADA claim (second claim) is not at issue in Defendant's Partial Motion to Dismiss. [Doc. 9 at 1].

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqball*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). While a plaintiff need not plead a *prima facie* case in the complaint, "the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation omitted); *Kendrick v. Penske Transp. Servs., Inc.*, 1999 WL 450886, at *1 (D. Kan. Apr. 13, 1999) *aff'd*, 220 F.3d 1220 (10th Cir. 2000) ("Although plaintiff need not precisely state each element of its claim, plaintiff must plead minimal factual allegations on those material elements that must be proved."). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqball*, 556 U.S. at 678 (citation omitted). This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. Moreover, plausibility is not established where "more likely explanations" exist for conduct that could conceivably support liability. *Id.* at 681.

**A. Title VII Reverse Gender Discrimination Claim**

Under Title VII, it is unlawful "to discharge any individual … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII prohibits discrimination against members of majority and minority groups alike. *Taken v. Okla. Corp. Com'n*, 125 F.3d 1366, 1369 (10th Cir. 1997) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278-80 (1976)). The Supreme Court has set forth a burden-shifting framework to evaluate Title VII disparate impact claims in which the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802 (1973). In order to establish a *prima facie* case, a plaintiff must show by a preponderance of the evidence that (1) he was a member of a protected group, (2) he was qualified for the job from which he was discharged, (3) he was discharged despite his qualifications, and (4) after the discharge, the position remained open and the employer sought applicants whose qualifications were no better than plaintiff's. *Mattioda v. White*, 323 F.3d 1288, 1292 (10th Cir. 2003) (citing *Reynolds v. School Dist. No.1, Denver, Colo.*, 69 F.3d 1523, 1531 (10th Cir. 1995)). Once the *prima facie* case is established, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the challenged action. *Id.* If the defendant provides a sufficient reason, the burden then shifts back to the plaintiff to prove that the defendant's articulated reason is pretextual. *Id.* at 804.

In a reverse gender discrimination claim, a plaintiff can establish a *prima facie* case of discrimination through one of two methods. *McGarry v. Bd. of Cty. Comm'rs of Cty. of Pitkin*, 175 F.3d 1193, 1199 (10th Cir. 1999) (citations omitted). First, under a modified version of the *McDonnell Douglas* test, a plaintiff "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dept.*, 971 F.2d 585, 589 (10th Cir. 1992). Under the second method, a plaintiff can establish a *prima facie* case through "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Id.* at 590. "[I]t is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision." *Id.*

Mr. Brimm has not alleged sufficient facts to establish a *prima facie* case under either method. The Complaint does not contain any allegations that suggest the District discriminates against males. Certainly no discriminatory statements linked to Plaintiff's gender are alleged, and it appears to be undisputed that at the time of Mr. Brimm's termination, men held more security guard positions at Falcon High than women. [Doc. 1 at ¶¶ 19, 21]. Moreover, Mr. Brimm was supervised and ultimately terminated by a male, Mr. Steve Oberg. *Id.* at ¶¶ 24, 46. These facts fail to demonstrate "background circumstances" sufficient to create an inference of reverse discrimination.

Nor has Plaintiff made a sufficient showing that, but for his sex, he would not have been terminated. Indeed, the Complaint fails to connect Mr. Brimm's status as a male with his termination in any meaningful way. Plaintiff suggests that Ms. Carson influenced the District's decision to terminate Mr. Brimm because of a discriminatory motive.[3] *Id.* at ¶¶ 23, 34-36, 38, 48. While the Complaint demonstrates a contentious relationship between the two co-workers [Doc. 1 at ¶¶ 23, 34-36], it does not provide any facts that would suggest Ms. Carson's behavior towards Mr. Brimm resulted from an animus against males. *Harris v. Crosshaven Properties, Inc.*, 2008 WL 1913392, at *7 (N.D. Okla. Apr. 28, 2008) (citing *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 488 (10th Cir. 2006)) ("To prevail under the subordinate bias theory, plaintiff first must establish a genuine issue of material fact concerning the bias of the subordinate."). Furthermore, the only statement referenced in the Complaint ("this never would have happened if you hadn't gone to HR with your back issue") provides an

---

[3] In Plaintiff's Response, he contends that an inference of discrimination can be drawn from the fact that he and Ms. Carson were subject to disparate discipline. [Doc. 31 at 13-14]. The court disagrees. The Complaint includes one reference to "complaints about [Ms. Carson's] demeanor and performance." [Doc. 1 at ¶ 31]. Plaintiff fails to provide any details regarding Ms. Carson's alleged conduct and the way in which it deviated from the District's established standards. *McGowan v. Cty. of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quoting *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir.2000)) ("[E]ven employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant.").

explanation for Mr. Brimm's termination totally unrelated to his gender. *Id.* at ¶ 47. It is unreasonable to infer from these allegations that, but for Mr. Brimm's status as a man, he would not have been terminated.

In sum, the Complaint fails to allege sufficient facts to demonstrate Defendant discriminated against Mr. Brimm on the basis of gender in its decision to terminate him, and therefore, Plaintiff's reverse gender discrimination claim should be dismissed.

### B. ADEA Claim

Under the ADEA, it is "unlawful for an employer … to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove a *prima facie* case of age discrimination, as is required by the *McDonnell Douglas* framework, a plaintiff must show: (1) he is a member of the class protected by the ADEA; (2) he suffered an adverse employment action; (3) he was qualified for the position at issue; and (4) he was treated less favorably than others not in the protected class. *Jones v. Okla. Cty. Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir.1998)).

To establish a disparate treatment claim under the ADEA, a plaintiff must prove by a preponderance of the evidence that age was the but-for cause of the employer's adverse decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008)). In the Tenth Circuit, a plaintiff need only demonstrate that "age was the factor that made a difference" as opposed to the "sole motivating factor" in the employment decision. *Jones*, 617 F.3d at 1277 (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010)).

Plaintiff fails to allege facts that would support a claim that his age was the but for cause of his termination. Mr. Brimm merely asserts that during his employment at Falcon High, he was the only security guard over the age of 50 [Doc. 1 at ¶ 18]; he was over 60 years-old when he was terminated [*Id.* at ¶ 62]; his supervisory role and twelve years of experience working as a Falcon High security guard prove that he is qualified for the position [*Id.* at ¶¶ 13, 22]; and Ms. Carson, who is younger than Mr. Brimm, was promoted to his position after the termination. *Id.* at ¶ 48. While these allegations nominally address each element of an age discrimination claim, they fail to assert the requisite nexus between Plaintiff's age and the District's decision to terminate him. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). For Plaintiff's claim to be plausible, the Complaint must allege at least some facts that demonstrate that age was the factor that made the difference in the decision. The factual allegations do not indicate that the decision-maker or any subordinates considered Mr. Brimm's age.

Accordingly, the Complaint does not state a claim for relief for age discrimination that is plausible on its face. Hence, Plaintiff's ADEA claim should be dismissed.

**C. FMLA Retaliation Claim**

To state a *prima facie* case of retaliation under FMLA, Plaintiff must establish: (1) he engaged in a protected activity; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the adverse action. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). The standard for proving a *prima facie* case is not strict, and plaintiff "need not overcome [defendant's] proffered legitimate, nondiscriminatory reasons" at this stage. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002). "The critical inquiry is whether the

plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Id.* (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (internal quotation marks omitted).

While temporal proximity between protected conduct and termination can be relevant evidence of a causal connection, a plaintiff may not rely on temporal proximity alone unless "the termination is *very closely* connected in time to the protected activity." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citation omitted); *see Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (deciding that a period of three months between the protected activity and the adverse action, standing alone, is not sufficient to establish causation); *Hughes v. Blue Cross & Blue Shield of Kansas, Inc.*, 2013 WL 3448731, at *4 (D. Kan. July 9, 2013) (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)) (further citations omitted) ("When calculating temporal proximity, the court uses the date the employer became aware of the protected activity as the starting point."). When additional evidence is needed to justify an inference of retaliatory motive, a plaintiff may rely on negative comments as long as there is "a nexus between the allegedly discriminatory statements and the employer's decision." *Tomisic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996) (finding a sufficient nexus where the statements were "directed to the plaintiffs individually" and "clearly before the decision-maker").

At this stage of the litigation, the court finds that Plaintiff has alleged sufficient facts to support a claim that the District retaliated against him because he took FMLA leave. The Complaint clearly establishes that Mr. Brimm engaged in protected activity and suffered an adverse action: he took FMLA leave [Doc. 1 at ¶ 29] and the District terminated him shortly after his return. *Id.* at ¶ 46. However, whether the pleading adequately demonstrates a causal

connection presents a much closer question. Following Plaintiff's back injury in July 2013, Defendant approved his request to take FMLA leave and also permitted him to use 41 days of accrued sick leave while he was seeking treatment. *Id.* at ¶ 29. The District first became aware of Mr. Brimm's protected activity when he made the FMLA request. *Id.* at ¶ 27. More than five months after the request, on January 7, 2014, Plaintiff returned to work at Falcon High. *Id.* at ¶ 33. As a result, Plaintiff cannot rely on temporal proximity alone and must provide additional evidence to establish causation in order to justify an inference of retaliatory motive. *See ONEOK*, 120 F.3d at 209.

Plaintiff' does allege that his supervisor, Mr. Oberg, told him that "this never would have happened if you hadn't gone to HR with your back issue." *Id.* at ¶ 47. Mr. Oberg apparently made this remark soon after Plaintiff's termination. *Id.* at ¶¶ 46-47. The timing of the statement suggests that it was intended to explain the District's decision. *See Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1251 (10th Cir. 2002) (finding a sufficient nexus to infer discriminatory intent when "[t]here was evidence from which a jury could conclude that the remark was intended to explain [the employment decision]"). Considering the remark was said directly to Mr. Brimm by his supervisor immediately after he was terminated, a sufficient nexus exists to demonstrate the requisite causal connection.

The court is not suggesting that Plaintiff will ultimately prevail on this claim. However, in construing all of the allegations in the light most favorable to the Plaintiff, as it must, the court finds that he has pleaded sufficient facts to establish a plausible FMLA retaliation claim. Thus, Plaintiff's FMLA claim should proceed to the next stage of litigation.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that Defendants' Partial Motion to Dismiss [Doc. 9] be GRANTED in part and DENIED in part. Plaintiff's FMLA claim should proceed and his Title VII and ADEA claims should be dismissed.

DATED at Denver, Colorado, this 19th day of February, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge